IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOSE SANABRIA     PLAINTIFF

VS.     NO. 5:21-CV-05060-TLB

WALMART, INC. and
DOUGLAS MOPPIN     DEFENDANTS

## COMPLAINT

COMES the Plaintiff, by and through counsel, Wallace, Martin, Duke & Russell, PLLC, and for Plaintiff's Complaint, Plaintiff states:

### PARTIES AND JURISDICTION

1. Plaintiff Jose Sanabria ("Sanabria") is a resident and citizen of Benton County, Arkansas, who worked for the Defendant Walmart in Benton County, Arkansas. Defendant Walmart, Inc. ("Walmart") is a domestic corporation with regard to the State of Arkansas with its primary place of business within the State of Arkansas being in Benton, County, Arkansas. Defendant Douglas Moppin ("Moppin") is a resident and citizen of McDonald County, Missouri.

2. This is an action brought under Title VII of the Civil Rights Act of 1964 ("Title VII") for sexual discrimination based on sexual orientation and retaliation; for outrage; promissory estoppel; and slander and false light. Accordingly, this court has subject matter jurisdiction. Since Walmart had its primary registered place of business within the State of Arkansas in Benton County, Arkansas, at the time of the acts given rise to this action, venue is proper.

## GENERAL ALLEGATIONS OF FACT

3. Sanabria is homosexual male who began working for Walmart in August 2002.

4. While working for Walmart, Sanabria was promoted numerous times within the company while keeping his sexual orientation private.

5. Sanabria kept his sexual orientation private because Walmart had a known history of discriminating against homosexual men with regard to management positions.

6. In 2016, Walmart promoted Sanabria to Operations Manager in a warehouse in Benton County, Arkansas.

7. During his time as Operations Manager through the end of 2019, Sanabria had no complaints filed against him with Human Resources.

8. Further, during his time working for Walmart, Sanabria had no disciplinary actions filed against him through the end of 2019.

9. In 2017, Douglas Moppin began working as a manager under Sanabria's supervision.

10. At no time between 2017 and January 1, 2020 did Sanabria have any specific complaints about Moppin.

11. At no time between 2017 and January 1, 2020 did Moppin have any specific complaints about Sanabria.

12. In early 2020, a woman who reported directly to Moppin told Sanabria that she had been sexually harassed by Moppin.

13. Sanabria properly directed the woman to follow Walmart's internal reporting policies and to go to Walmart Human Resources for help.

14. As a result of this direction, the woman contacted Shanda Nixon ("Nixon").

15. Further, this victim reported that two other women who also worked under Moppin were also being sexually harassed by Moppin.

16. By the end of January 2020, one of Moppin's victims had already transferred out of the warehouse in order to escape Moppin's sexual advances.

17. Upon finding out that there were multiple women reporting sexual harassment by Moppin, Sanabria contacted Walmart Human Resources himself to let them know what was going on.

18. Sanabria spoke with Nixon as she was the person assigned to investigate all three of the sexual harassment reports made against Moppin.

19. Upon information and belief, by February 2020, Nixon directly reported to Moppin the names of the women complaining about him as well as the specifics of the report made to her by Sanabria in open violation of Walmart's policies and procedures.

20. After being informed of the claims made against him, Moppin concocted a story in which he claimed he was a victim of sexual harassment by the person who reported him for sexual harassment – Sanabria.

21. At no time did Moppin provide any reliable or actionable information against Sanabria to support his claims.

22. Nixon knew that the claims against Sanabria were false and retaliatory but chose to initiate a full investigation against Sanabria anyway.

23. At all times during the investigation, Nixon knew that she was failing to properly investigate the claims against Moppin by failing to properly gather evidence and witness statements.

24. At all times during the investigation, Nixon knew that she was failing to properly investigate the claims against Sanabria by Moppin by failing to properly gather evidence and witness statements.

25. Nixon took slow action against Moppin which allowed Moppin time to continue victimizing and threatening the workers under Sanabria's management.

26. Nixon's failure to properly investigation the claims against Moppin also provided Moppin time to intimidate other workers at Walmart including telling witnesses against him that "he wasn't going down alone" and that he was "taking Jose with him."

27. Complaints were made about how slowly Nixon was working on the allegations against Moppin including specific complaints by Sanabria prior to Nixon ever telling Sanabria there was an investigation going on based on the false story of Moppin.

28. Nixon changed her focus by March 2020 to focus solely on Sanabria instead of Moppin.

29. Nixon was well aware of the statements made by Moppin about taking Sanabria down with him as well as the threats Moppin had made to witnesses.

30. Disregarding this knowledge, Nixon recommended the termination of Sanabria anyway based solely upon the unfounded allegation of male-on-male sexual harassment by Moppin.

31. Nixon's actions aligned with Sanabria's historical observation of Walmart never promoting or often quickly removing openly homosexual men from management positions within Walmart.

32. No reasonable person could have found the allegation by a three-time and ongoing sexual harasser like Moppin to be believable.

33. Sometime in early March 2020, Nixon removed Moppin from his management position and effectively put Moppin on a one-year leave from Walmart.

34. On March 12, 2020, Nixon fired Sanabria and offered him no option of ever returning to Walmart.

35. Upon information and belief, Moppin was allowed to return to a management position with Walmart in 2021.

36. Upon information and belief, Moppin, a three-time sexual harasser, has been allowed to return to Walmart without limitation.

37. To this day, Moppin continues to brag to members of the community about how he took down a gay guy who dared to turn him in for sexual harassment.

38. Similarly situated males who are not homosexual and who worked for Walmart who committed as serious or more serious offenses than those committed by Plaintiff were allowed to retain their employment with Walmart.

39. Plaintiff timely filed a Charge of Discrimination with the EEOC, and now timely files this action within ninety (90) days of receiving a Right to Sue Letter from the EEOC.

### COUNT I – TITLE VII AGAINST WALMART AGAINST WALMART

40. Plaintiff realleges the foregoing paragraphs, as though fully stated herein.

41. Walmart has violated Title VII of the Civil Rights Act of 1964 by discriminating against Sanabria based on Sanabria's sexual orientation and retaliated against Sanabria for participating in a protected activity that being participating in an internal investigation regarding violations of company policy by a fellow manager.

42. As a direct and proximate cause of Walmart's acts or omissions as alleged herein, Sanabria has suffered lost wages, lost fringe benefits, lost earning capacity, negative references, and has incurred expenses that would not otherwise have been incurred.

43. Walmart's conduct has been in willful, intentional, and knowing violation of the law, meriting punitive damages.

### COUNT II – OUTRAGE AGAINST ALL DEFENDANTS

44. Plaintiff realleges the foregoing paragraphs, as though fully stated herein.

45. Defendants willfully and wantonly caused severe emotional distress via extreme and outrageous conduct.

46. The conduct of the Defendants with regard to Sanabria's complaints regarding Moppin goes beyond all possible bounds of decency, is atrocious, and is utterly intolerably in civilized society.

47. As an agent of Walmart, Moppin was allowed to openly sexually harass employees with impunity, defame and slander Sanabria while knowing he faced no ramifications for doing so, and, upon information and belief, was ultimately rewarded for taking these actions as ratified by Walmart re-employing him after only a short time of supposedly "disciplining" him for sexual harassment.

48. Walmart openly and knowingly ratified the actions of Moppin via its Human Resources Department as well as its management staff.

49. Walmart openly and knowingly encouraged Moppin to harass and intimidate Sanabria for reporting Moppin's ongoing victimization of female employees.

50. Further, at all times, Walmart knew that the allegations Moppin made against Sanabria were indeed false.

51. Upon information and belief, Walmart participated with Moppin in creating the supposed infractions for which Walmart later accused Sanabria.

52. As a direct and proximate cause of Defendants' acts and omissions alleged herein, Sanabria has lost wages, lost fringe benefits, lost earning capacity, and incurred other damages in an amount to be proven at trial.

53. Defendants' actions have been willful, such that the Sanabria is entitled to an award of liquidated and punitive damages.

## COUNT III – PROMISSORY ESTOPPEL AGAINST WALMART

54. Plaintiff re-alleges the foregoing as if fully set out herein.

55. Walmart provided Sanabria with a handbook that included internal processes by which employees could seek remedy for violations of Walmart's policies regarding sexual discrimination, sexual harassment, retaliation, and the reporting of such infractions.

56. Sanabria sought to invoke these processes by reporting violations of the sexual discrimination, sexual harassment, gender discrimination, and retaliation policies on the part of Moppin against employees of Walmart.

57. Sanabria regarded the procedures as outlined in Walmart's handbook as a promise to abide by federal law and Walmart's own internal procedures regarding the reporting of sexual discrimination, sexual harassment, gender discrimination, and retaliation.

58. Sanabria did not regard the procedures as outlined in Walmart's handbook as a promise of continued employment and understood that his employment with Walmart was "at will" in nature.

59. Walmart intended for Sanabria to regard Walmart's handbook as a promise that Walmart would abide by the procedures for the reporting of sexual discrimination, sexual harassment, gender discrimination, and retaliation as outlined above and as discussed in Walmart's handbook.

60. Sanabria did, in fact, reasonably rely upon Walmart's promise to abide by its own procedures as outlined in Walmart's handbook.

61. Walmart failed to abide by Walmart's own procedures as outlined in Walmart's handbook regarding the reporting of sexual discrimination, sexual harassment, gender discrimination, and retaliation.

62. Due to Sanabria's reliance on Walmart's promise to abide by the procedures as outlined in Walmart's handbook, Sanabria has experienced an injustice in the form of termination or constructive discharge and has been damaged.

63. As a direct and proximate cause of Walmart's acts and omissions alleged herein, Sanabria has lost wages, lost fringe benefits, lost earning capacity, and incurred other damages in an amount to be proven at trial.

64. Walmart's actions have been willful, such that Sanabria is entitled to an award of liquidated and punitive damages.

## COUNT IV – SLANDER AND FALSE LIGHT AGAINST MOPPIN

65. Plaintiff re-alleges the foregoing as if fully set out herein.

66. By virtue of the facts alleged herein, Moppin made false statements of material fact to members of the community, which have damaged Plaintiff's professional reputation.

67. By virtue of the facts alleged herein, Moppin made statements, that presented the facts in a misleading way, that damaged Plaintiff's professional reputation.

68. As a direct and proximate cause of Moppin's actions as alleged herein, Plaintiff has lost wages, lost fringe benefits, and suffered both severe mental and

9

emotional distress in an amount to be proven at trial.

69. Moppin's actions have been so egregious so as to warrant the imposition of punitive damages.

WHEREFORE, Plaintiff prays for appropriate compensatory, liquidated, and punitive damages exceeding $150,000, reinstatement or front pay, for reasonable attorneys' fees, for costs, for a trial by jury, and for all other proper relief.

Respectfully submitted,

WALLACE, MARTIN, DUKE & RUSSELL, P.L.L.C.
Attorneys at Law
1st Floor, Centre Place
212 Center Street
Little Rock, Arkansas 72201
(501) 375-5545
Attorney for Plaintiff


By:     */s/ James Monroe Scurlock*
      James Monroe Scurlock, AR Bar No. 2012028
      jms@WallaceLawFirm.com